*NOT FOR PUBLICATION*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| NANCIE FIMBEL *and* | : | |
| CONSTANCE FIMBEL, | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | Civ. Action No. 14-1915 (FLW)(DEA) |
| FIMBEL DOOR CORP., | : | |
| EDWARD FIMBEL, JR., | : | **OPINION** |
| EDWARD FIMBEL, III, | : | |
| FIMBEL ARCHITECTURAL DOOR | : | |
| SPECIALTIES, LLC *and* | : | |
| JEFFRY DEAL | : | |
| | : | |
| Defendants. | : | |

**WOLFSON, United States District Judge:**

Presently before the Court is a motion by Defendants Fimbel Door Corporation ("FDC") Edward Fimbel Jr. ("Fimbel Jr."), Edward Fimbel III ("Fimbel III"), Fimbel Architectural Door Specialties, LLC ("FADS"), and Jeffry Deal ("Deal") (collectively, "Defendants") to dismiss Counts Three, Five, Eight, and Nine of the Amended Complaint filed by Plaintiffs Nancie Fimbel ("Nancie") and Constance Nickel ("Constance") (collectively, "Plaintiffs"). Upon the review of parties' papers and the relevant case law, the Court grants, in part, Defendants' Motion by dismissing Counts Five, Eight, and Nine of Plaintiff's Amended Complaint.

### I.      Background

The following facts are taken from Plaintiffs' Amended Complaint and assumed to be true for the purposes of this motion to dismiss. Nancie Fimbel and Constance Nickel are minority shareholders of Fimbel Door Corporation, a New Jersey corporation specializing in the

manufacturing of garage doors.[1] Am. Compl. at ¶¶ 5, 6. FDC's headquarters and principal place of business is in Whitehouse, New Jersey. *Id.* ¶ 7. The company is closely-held and family-operated, with fewer than 25 shareholders.[2] *Id.* ¶ 14. FDC's current Board of Directors ("Board") consists of Edward Fimbel Jr., Edward Fimbel III, Michael Fimbel, and Erin Heindrichs. *Id.* ¶ 15.

In 1997, Fimbel III distributed a business plan to the shareholders that would have allowed him to control FDC, but his plan was rejected by the shareholders. *Id.* ¶ 19. Thereafter, the Amended Complaint alleges that Fimbel Jr., Fimbel III, and Jeffry Deal, who began working for FDC in the 1990s, "developed a plan to allow Fimbel III and Deal to continue in the manufacturing of garage doors, using FDC's equipment, client base, and goodwill." *Id.* ¶ 20. Plaintiffs allege that in 2004, Fimbel III and Deal formed Fimbel Architectural Door Specialties, LLC, in furtherance of the plan.[3] *Id.* ¶ 21.

Plaintiffs allege that after FADS was established, Fimbel Jr. began divesting FDC of its assets without Board approval and made decisions that were not in the financial interests of FDC. *Id.* ¶ 23. First, Plaintiffs allege that since 2009, Fimbel Jr. has been systematically surrendering his ownership in FDC by transferring his shares to his children, resulting in Fimbel III owning the largest percentage of FDC shares. *Id.* ¶ 24. Second, Plaintiffs claim that Fimbel Jr. decided that FDC would invest more than $1 million in a solar panel purchase—a decision made without shareholder approval and resulting in FDC operating at a loss for several years. *Id.* ¶ 25. Third, Plaintiffs allege that in 2012, Fimbel Jr. made arrangements to sell FDC's Whitehouse, New Jersey

---

[1] Nancie owns approximately 3% of FDC shares; Constance owns approximately 10.5% of FDC shares. Am. Compl. at ¶¶ 5, 6.

[2] The company was founded in 1924 by Edward Fimbel Sr. and others. *Id.* ¶ 12. Fimbel Sr. is Defendant Fimbel Jr.'s father and Plaintiffs' grandfather. *Id.* ¶ 15.

[3] Plaintiffs allege that although FADS does not describe itself in its Certificate of Formation as an entity related to FDC, its website refers to the "family" business formed in 1924 and refers to itself as "fourth generation." *Id.* ¶ 21.

property without the shareholders' prior authorization—the shareholders were informed only at the eve of closing and pressured into authorizing the sale to prevent the risk of placing FDC in breach of the real estate contract. *Id.* ¶¶ 26, 27. While Fimbel Jr. assured the shareholders that the value of their FDC shares would rise and that the shareholders would receive dividends soon after the closing, no dividends were paid. *Id.* ¶¶ 28,29. Fourth, Plaintiffs claim that Fimbel Jr. has used FDC funds to make at least one unauthorized, unsecured, unrecorded, and yet-outstanding loan to Fimbel III, his son, presumably for Fimbel III's investment in FADS.[4] *Id.* ¶¶ 30–33.

Plaintiffs further claim that Defendants engaged in differential treatment towards FDC's shareholders by agreeing to indemnify only the shareholders who live in New Jersey for that portion of their state tax liabilities attributable to FDC income; Plaintiffs do not reside in New Jersey and FDC does not pay their tax liabilities. *Id.* ¶ 39.

Finally, Plaintiffs allege that Defendants have failed to (1) hold regular meetings, (2) take the required minutes, (3) share FDC's financial information with Plaintiffs, (4) allow Plaintiffs to sell their shares for a fair value, (5) allow an appraisal of FDC to be performed in accordance with Plaintiffs' request, and (6) provide notice when there is a transfer or sale of shares, "shroud[ing] FDC in a secrecy that benefits Fimbel Jr. and his direct descendants to the detriment of Plaintiffs." *Id.* ¶¶ 41–47.

---

[4] Plaintiffs claim that Fimbel Jr. justified the loans to Plaintiffs by stating that Plaintiffs would benefit from FADS's success, though Plaintiffs state that they received no benefit from FADS. *Id.* ¶ 34. Plaintiffs further claim that though Fimbel Jr. represented to Plaintiffs that the loan amount was $635,000, FDC's 2012 tax return shows loans in excess of $740,000, "suggesting that Fimbel Jr. has unlawfully authorized at least two loans to Fimbel III and/or others." *Id.* ¶¶ 35, 36.

Plaintiffs also claim that Fimbel Jr. engaged in unfair treatment by denying Nancie Fimbel's request for a loan which Nancie allegedly requested asked after learning that Fimbel Jr. was willing to loan FDC proceeds, perhaps in lieu of paying dividends. *Id.* ¶ 38.

On March 26, 2014, Plaintiffs filed a complaint in federal court, claiming diversity jurisdiction.[5] Plaintiffs' Amended Complaint alleges the following causes of action: in Count One, a violation of the New Jersey Oppressed Minority Shareholders ("NJOMS") statute, N.J.S.A. 14A 12-7; in Count Two, unauthorized merger in violation of N.J.S.A. 14A 10-1 *et seq.*; in Count Three, fraud; in Count Four, improper loans to a corporate officer/director in violation of N.J.S.A. 14A 6-11; in Count Five, a violation of the New Jersey Racketeer Influenced and Corrupt Organization ("NJRICO") statute; in Count Six, breach of fiduciary duty; in Count Seven, corporate waste; in Count Eight, unjust enrichment; in Count Nine, aiding and abetting; in Count Ten, inspection of books and records under N.J. STAT. ANN. 14A 5-28; and in Count Eleven, an accounting.[6] *Id.* ¶¶ 54–120.

On May 28, 2014, Defendants moved to dismiss Counts Three, Five, Eight, and Nine, alleging under Rule 12(b)(6) of the Federal Rules of Civil Procedure that Plaintiffs have failed to state a claim. Plaintiffs oppose Defendants' motion and, in the alternative, request leave to amend their complaint.

## II.    Standard of Review

When reviewing a motion to dismiss on the pleadings, courts "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v.*

---

[5] *Id* ¶. 2. According to the Complaint, Nancie Fimbel is domiciled in Dubai, United Arab Emirates, and Constance Nickel is domiciled in New York. Defendants are all domiciled in New Jersey. *Id.* ¶¶ 5-12.

[6] Plaintiffs maintain that their claims are not derivative "in light of their rights under the Oppressed Minority Shareholders statute." However, to the extent that the Court determines that the Complaint contains derivative claims, Plaintiffs state that asserting a demand to FDC to pursue this litigation would have been futile because "the allegations set forth in their Complaint demonstrate that Fimbel Jr. and Fimbel III have a history of acting against Plaintiffs/shareholders' interests and ignoring their requests for information about FDC" and (2) "it seems improbable that the primary wrongdoers, one of whom is the primary beneficiary of the unlawful actions and FDC's largest shareholder, will pursue this litigation on FDC's behalf" on the request of their daughter and granddaughter." *Id.* ¶¶ 48–53.

*Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (citation and quotations omitted). In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the Supreme Court clarified the Rule 12(b)(6) standard: the factual allegations set forth in a complaint "must be enough to raise a right to relief above the speculative level." *Id.* at 555. As the Third Circuit has stated, "[t]he Supreme Court's *Twombly* formulation of the pleading standard can be summed up thus: 'stating . . . [a] claim requires a complaint with enough factual matter (taken as true) to suggest' the required element. This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." *Phillips*, 515 F.3d at 234 (quoting *Twombly*, 127 U.S. at 555); *see also Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 118 (3d Cir. 2013) ("[A] claimant does not have to set out in detail the facts upon which he bases his claim. The pleading standard is not akin to a probability requirement; to survive a motion to dismiss, a complaint merely has to state a plausible claim for relief." (citations omitted)).

In affirming that *Twombly*'s standards apply to all motions to dismiss, the Supreme Court explained several principles. First, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Second, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679. Therefore, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* Ultimately, "a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." *Fowler v. U PMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009). However, "a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings . . . [although a] limited exception

exists for documents that are integral to or explicitly relied upon in the complaint." *W. Penn Allegheny Health Sys., Inc. v. UPMC*, 627 F.3d 85, 97 n.6 (3d Cir. 2010) *cert. denied*, 132 S. Ct. 98 (2011) (citation and internal quotation marks omitted).

The Third Circuit has reiterated that "judging the sufficiency of a pleading is a context-dependent exercise" and "[s]ome claims require more factual explication than others to state a plausible claim for relief." *Id.* at 98. That said, the Rule 8 pleading standard is applied "with the same level of rigor in all civil actions." *Id.* (quoting *Iqbal*, 556 U.S. at 684).

"Independent of the standard applicable to Rule 12(b)(6) motions," Rule 9(b) of the Federal Rules of Civil Procedure requires a heightened pleading standard for claims sounding in fraud or mistake. *In re Rockefeller Ctr. Properties, Inc. Sec. Litig.*, 311 F.3d 198, 216 (3d Cir. 2002); *see also* FED. R. CIV. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."). The Third Circuit has adopted a flexible approach to evaluating whether a plaintiff's fraud claim meets Rule 9(b)'s heightened pleading standard. *Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 791 (3d Cir. 1984) ("Rule 9(b) requires plaintiffs to plead with particularity the 'circumstances' of the alleged fraud . . . . It is certainly true that allegations of 'date, place or time' [suffice], but nothing in the rule requires them. Plaintiffs are free to use alternative means of injecting precision and some measure of substantiation into their allegations of fraud."); *see also Frederico*, 507 F.3d at 200 ("Pursuant to Rule 9(b), a plaintiff alleging fraud must state the circumstances of the alleged fraud with sufficient particularity to place the defendant on notice of the 'precise misconduct with which it is charged.'" (quoting *Lum v. Bank of America,* 361 F.3d 217, 223–24 (3d Cir. 2004)).

## III.     Analysis

a. *Count Three – Fraud*

In Count Three, Plaintiffs state that "Fimbel Jr. represented to Plaintiffs that FDC's shares would be worth $2,500 or more per share when the Property was sold, and that dividends would be paid after the sale." Am. Compl. at ¶ 71. However, since the property was sold, "Fimbel Jr. has refused to purchase Plaintiffs' shares, alleging that FDC does not have the funds to do so, despite the fact that the Property was sold for approximately $4.2 million and the company apparently has funds to make loans that, upon information and belief, are unauthorized and unlawful." *Id.* ¶ 72. Further, Plaintiffs allege that they relied upon Fimbel Jr.'s representations in agreeing to authorize the sale of the Property, "to their harm and detriment," and have sustained substantial damages as a direct and proximate result of Fimbel Jr.'s "material misrepresentations regarding the payment of dividends" and the growth in the value of their shares. *Id.* ¶¶ 73–74. Plaintiffs also incorporate into their fraud claim the substantive allegations stated earlier in the Amended Complaint. Am. Compl. at ¶ 70. In their earlier substantive allegations, Plaintiffs state that Fimbel Jr. arranged to sell FDCs Whitehouse, New Jersey property in 2012, that shareholders were not informed about the impending sale until the eve of closing, and that, "in an effort to appease the shareholders," Fimbel Jr. assured the shareholders that the value of their shares would be greatly enhanced and that dividends would be paid soon after closing. *Id.* ¶¶ 26–28.

Defendants argue that Plaintiffs do not meet the heightened pleading requirements for asserting a fraud claim required under Rule 9(b).

"To state a claim for fraud under New Jersey law, a plaintiff must allege (1) a material misrepresentation of [a presently existing or past] fact; (2) knowledge or belief by the defendant of its falsity; (3) intention that the other person rely on it; (4) reasonable reliance thereon by the

other person; and (5) resulting damage." *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007) (citing *Gennari v. Weichert Co. Realtors,* 148 N.J. 582 (1997)).

Here, Plaintiffs' allegations, construed in the light most favorable to Plaintiffs, meet the elements of common-law fraud in New Jersey and meet the heightened pleading standards under Rule 9(b).[7]

First, Fimbel Jr.'s alleged statement that shareholders would receive dividends can be seen as a false promise of future action or payment. "An alleged fraud cannot be predicated solely on a promise of future performance that, in the end, goes unfulfilled." *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1186 (3d Cir. 1993) (applying New Jersey law); *see also Coastal Grp., Inc. v. Westholme Partners*, No. CIV.A. 94-3010(MTB), 1996 WL 33545605, at *9 (D.N.J. Oct. 3, 1996). "However, a false representation of an existing intention, i.e., a false state of mind, with respect to a future event or action has been held to constitute actionable misrepresentation. In other words, the defendant must have no intention at the time he makes the statement of fulfilling the promise." *Capano v. Borough of Stone Harbor*, 530 F. Supp. 1254, 1264 (D.N.J. 1982) (internal quotation marks and citations omitted). "Similarly, statements that can be categorized as 'puffery' or 'vague and ill defined opinions' are not assurances of fact and thus do not constitute misrepresentations." *Alexander v. CIGNA Corp.*, 991 F. Supp. 427, 435 (D.N.J. 1998). "Indeed, in order to constitute a fact, a statement's content must be susceptible of 'exact knowledge' at the time it is made." *Id.* In *Alexander*, the court held that language such as "[the] relationship would be long lasting" and "agreement one in 'perpetuity'" were inactionable because they indicated future events. *Id.* at 436.

---

[7] In their opposition brief, Plaintiffs appear to argue that Count Three actually states a claim for fraudulent inducement, though they do not state that in the Amended Complaint. Plaintiffs' brief states that "Plaintiffs were induced to agree to the [property] sale due to Fimbel Jr.'s misrepresentations that, after the sale, their shares would be worth more and that dividends would be paid to the shareholders." Pls.' Opp. Brief at 8. Because Plaintiffs do not state a fraudulent inducement claim in their Amended Complaint, however, the Court will not analyze Plaintiff's claim through the lens of fraudulent inducement.

In *Capano*, the Court held that the claim was not actionable because a promise that "something would be worked out" was too vague and indefinite to constitute a misrepresentation. 530 F. Supp. at 1264; *see also Roll v. Singh*, No. 07-CV-04136FLW, 2008 WL 3413863, at *18 (D.N.J. June 26, 2008), as amended (Apr. 12, 2010).

Here, assuming the facts true as pled in the Amended Complaint, Fimbel Jr.'s promise that FDC would pay dividends to its shareholders upon sale of the Whitehouse, New Jersey property constitutes a misrepresentation.[8] Fimbel Jr.'s subsequent conduct—refusing to fulfill his promise to pay dividends despite loaning FDC's money to his son, Fimbel III later that year—is circumstantial evidence of Fimbel Jr.'s false state of mind and enough to meet the first element of common-law fraud under the Rule 12(b)(6) standard. *See Roll*, 2008 WL 3413863 at *2, 12 (finding that the plaintiff had sufficiently stated a fraud claim for the purposes of a motion to dismiss where the plaintiff accepted the defendant's offer, "allegedly in reliance on [the defendant's] representations that the redemption of" the plaintiff's interest in the company majority-owned by the defendant "was necessary and urgent, and that the commercial and technical relationships" between the defendant's company and the company majority-owned by the plaintiff "would continue").

Second, Plaintiff's allegation that, instead of using FDC funds to provide dividends, Fimbel Jr. used FDC funds to make loans to his son, Fimbel III, may demonstrate knowledge or belief by Fimbel Jr. of the falsity of his material representation. Third, Plaintiffs' statement that Fimbel Jr.

---

[8] On the other hand, Fimbel Jr.'s promise that the value of Plaintiffs' shares would increase following the sale of FDC's Whitehouse, New Jersey property is insufficiently vague. Further, Plaintiffs do not claim anywhere in the Amended Complaint that Fimbel Jr.'s statement is actually false—they allege that they cannot ascertain FDC's present valuation but do not state that the value of their shares has not risen as a result of the sale. *See* Am. Compl. Therefore, I do not find Fimbel Jr.'s assurance that FDC's share values would increase to constitute a material misrepresentation of presently existing or past fact and, accordingly, find the statement does not supports a common law fraud claim. *See, e.g.*, *Bianchi v. Lazy Days R.V. Ctr., Inc.*, No. CIV.A.06-1979 MLC, 2007 WL 1959268, at *6 (D.N.J. July 5, 2007).

made the above promise "[i]n an effort to appease the shareholders" implies Fimbel Jr.'s intention that Plaintiffs rely on his material misrepresentations. Am. Compl. at ¶ 28. Fourth, Plaintiffs' statements that they relied on the above misrepresentation in agreeing to authorize the sale of FDC's Whitehouse property can be reasonable reliance thereon by the other person. Finally, Plaintiff states that "[a]s a result of the material misrepresentations regarding payment of dividends and that value of shares, Plaintiffs have sustained substantial damages," a clear statement indicating resulting damage. *Id.* ¶ 74.

Further, Plaintiffs' description of when Fimbel Jr. allegedly made the misrepresentation (in 2012, on the eve of the sale of FDC's Whitehouse, New Jersey property), to whom he made the misrepresentation (FDC's shareholders), and the specific content of the misrepresentations (that dividends would be paid soon after closing) sufficiently puts Defendants "on notice of the precise misconduct with which [they] are charged," meeting the Rule 9(b) standard for particular pleading. *Frederico*, 507 F.3d at 200; *Seville*; 742 F.2d at 791. Therefore, Defendants' motion to dismiss Plaintiffs' fraud claim against Fimbel Jr is denied.

### b.  Count Five – Civil NJRICO

NJRICO states, "It shall be unlawful for any person employed by or associated with any enterprise engaged in or activities of which affect trade or commerce to conduct or participate, directly or indirectly, in the conduct of the enterprise's affairs through a pattern of racketeering activity." N.J. STAT. ANN. § 2C:41-2(c). Generally, NJRICO makes it unlawful for a person to both be employed by or associated with an "enterprise" and engage or participate or become involved in the business of the enterprise "through a pattern of racketeering." *State v. Ball,* 141

N.J. 142, 151 (1995).[9] "Any person damaged in his business or property by reason of a violation of [NJRICO] may sue therefor in any appropriate court and shall recover threefold any damages he sustains and the cost of the suit . . . ." N.J. STAT. ANN. 2C:41-4(c). NJRICO is broader in scope and is construed more liberally than the federal RICO statute. *See State v. Bisaccia*, 319 N.J. Super. 1, 20–21 (N.J. App. Div. 1999).

To state a NJRICO claim, a plaintiff must allege "(1) the existence of an enterprise; (2) that the enterprise engaged in or its activities affected trade or commerce; (3) that defendant was employed by, or associated with the enterprise; (4) that he or she participated in the conduct of the affairs of the enterprise; and (5) that he or she participated through a pattern of racketeering activity." N.J. STAT. ANN. 2C:41-2c. Courts have held that a claimant pleading a NJRICO violation must comport with Rule 9(b)'s heightened pleading requirements for fraud. *E.g., Construcciones Haus Soceidad v. Kennedy Funding Inc.*, No. 07-CV-0392PGS, 2008 WL 1882857, at *5 (D.N.J. Apr. 24, 2008); *Capital First Corp., v. Todd*, No. CIV A 04-6439 MLC, 2006 WL 3827329, at *15 (D.N.J. Dec. 27, 2006). A plaintiff must also allege that the NJRICO violation proximately caused his or her injuries; if a plaintiff is harmed only indirectly by the predicate acts, the plaintiff does not have standing to pursue a RICO claim. *Interchange State Bank v. Veglia*, 286 N.J. Super. 164, 180 (App. Div. 1995).

In Count Five, Plaintiffs incorporate earlier allegations and state: (1) "FDC is an enterprise as defined by the NJRICO statute,"[10] (2) Fimbel Jr., as FDC's sole employee, makes all the business decisions on behalf of FDC; (3) "Fimbel Jr. participated in a pattern of racketeering activity by, on

---

[9] While the New Jersey Supreme Court acknowledged in *Ball* that NJRICO departs materially in certain respects from the federal RICO act that served as a model for the state law, the *Ball* court cited several federal RICO cases in its interpretive analysis when appropriate, as the Court will do here. *See id.*

[10] Plaintiffs further allege that FDC "has been, since its conception, engaged in [sic] commercial practice of manufacturing garage doors" and remains a viable corporation. Am. Compl. ¶ 83.

at least two occasions, using corporate funds for the purpose of defrauding FDC's shareholders, including but not limited to Plaintiffs"; and (4) "[a]s a direct and proximate result of these RICO violations, Plaintiffs have suffered substantial damages." Am. Compl. ¶¶ 81–87.

Defendants claim that Plaintiffs (1) lack standing to bring a NJRICO claim because they fail to allege that they suffered a tangible loss and (2) fail to properly state a NJRICO claim under Rule 9(b) or otherwise.

I begin by analyzing whether Plaintiffs have standing. While a RICO injury is generally considered a question of Article III standing, Section 1964(c) of the RICO statute sets forth additional criteria that "must be met." *In re Schering-Plough Corp. Intron/Temodar Consumer Class Action*, No. 2:06-CV-5774(SRC), 2009 WL 2043604, at *8 (D.N.J. July 10, 2009). To establish RICO standing, "a RICO plaintiff [must] make two related but analytically distinct threshold showings . . . : (1) that the plaintiff suffered an injury to business or property; and (2) that the plaintiff's injury was proximately caused by the defendant's violation of 18 U.S.C. § 1962." *Maio v. Aetna, Inc.*, 221 F.3d 472, 483 (3d Cir. 2000); *see also Franklin Med. Assocs. v. Newark Pub. Sch.*, 362 N.J. Super. 494, 514 (App. Div. 2003) (applying the same standards in the context of NJRICO). "[A] showing of injury requires proof of a concrete financial loss and not mere injury to a valuable intangible property interest." *Maio*, 362 N.J. Super. at 514.

In their opposition brief, Plaintiffs claim that they have alleged sufficient harm as follows: (1) Plaintiffs have been unable to secure a loan from FDC despite Fimbel III's ability to do so, and (2) Plaintiffs have not been indemnified for the full amount of their state tax liabilities regarding their ownership of FDC shares despite FDC's indemnification of the New Jersey-based shareholders. Am. Compl. ¶¶ 34–39. However, in Count Five, Plaintiffs state Fimbel's alleged practice of using corporate funds to defraud FDC's shareholders as the sole basis for their NJRICO claim. *Id.* ¶ 86.

"It is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." *Com. of Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988).

Based on the allegations set forth in Plaintiffs' NJRICO claim, I find that Plaintiffs do not allege a tangible personal loss that would give them standing. At minimum, "the injury to business or property element of [RICO claims] can be satisfied by allegations and proof of actual monetary loss, i.e., an out-of-pocket loss." *Maio v. Aetna, Inc.*, 221 F.3d 472, 483 (3d Cir. 2000). However, Plaintiffs do not allege any concrete, out-of-pocket losses—at best, they allege that Fimbel Jr. merely loaned FDC money to his son, Fimbel III, but precluded Plaintiffs from securing loans from FDC and from receiving the dividends they were promised.

First, the inability to secure a loan is plainly not a concrete financial loss. *See In re Taxable Mun. Bond Sec. Litig.*, 51 F.3d 518, 522 (5th Cir. 1995) (The plaintiff's "contention that he has sustained a lost 'opportunity' to obtain a [low-interest] loan by itself is too speculative to constitute an injury [under RICO].") (cited in *Magnum v. Archdiocese of Philadelphia*, 253 F. App'x 224, 229 (3d Cir. 2007)).

Second, failure to receive dividends is also not a concrete financial loss. Dividends are the "division or distribution of corporate profits to the shareholders" and are necessarily accompanied by a corresponding drop in the valuation of the corporation. *See* 11 FLETCHER CYC. CORP. § 5318. Here, FDC's profits from the sale of its property appear to have been largely retained by the company—FDC's loans[11] to Fimbel III at most amounted to approximately $740,000, a fraction of the $4.2 million at which FDC's Whitehouse, New Jersey property sold. *See* Am. Compl. at ¶

---

[11] Plaintiffs allege that "[a]lthough Fimbel Jr. represented to Plaintiffs that the loan amount [to Fimbel III] was $635,000, FDC's 2012 tax return shows loans in excess of $740,000. The discrepancy between the information Fimbel Jr. reported to Plaintiffs and the information contained in the 2012 tax return suggests that Fimbel Jr. has unlawfully authorized at least two loans to Fimbel III and/or others." Am. Compl. at ¶ 35. For purposes of clarity and giving Plaintiffs' the full benefit of their allegations, the Court will refer to the $740,000 as multiple loans received by Fimbel III.

35. Further, albeit Fimbel III received loans, even if the loans are unsecured and unreported, they are debts that must be repaid to the company and are therefore not permanent losses. Finally, even if Fimbel Jr.'s action damaged FDC's valuation and will reduce Plaintiffs' profit payouts, Plaintiffs would still only assert an indirect injury. *See, e.g.*, *Andrews v. Gerace*, No. 13 CV 1521, 2014 WL 4627383, at *4 (N.D. Ill. Sept. 15, 2014) (explaining that a shareholder-plaintiff's "otherwise-indirect injury [is not] converted to a direct one merely because the profit payouts she received from company coffers amounted to less than what she would have received absent any wrongdoing by the defendants" because "the most logical inference to be drawn from this allegation is that [the plaintiff] received less in company payouts because, post looting, the companies had less to give" and thus, the "assertion that she lost out on profits is no different from an assertion that, due to the defendants' ill behavior, [the plaintiff] suffered a decreased return on her investment in the corporations—. . . precisely the type of injury that does not confer upon shareholders an individual right to sue under the RICO Act"). *See also Allstate New Jersey Ins. Co. v. Summit Pharmacy, Inc.*, No. CIV.A. 13-5809 JBS, 2014 WL 1767528, at *8 (D.N.J. May 2, 2014). Without showing that Plaintiffs incurred out-of-pocket expenses because of Defendants' racketeering activities, Plaintiffs cannot establish standing to sue under NJRICO and thus, their NJRICO claim must be dismissed.[12]

---

[12] Assuming, *arguendo*, that Plaintiffs' allegations that FDC failed to fully indemnify out-of-state shareholders for their tax liability had been pleaded as a NJRICO violation and Plaintiffs have alleged an injury for NJRICO standing purposes, Plaintiffs' claim would likely still fail under Rule 12(b)(6) due to deficient pleading under the "racketeering activity" element. N.J. STAT. ANN. § 2C:41-1 (delineating the predicate offenses for alleging a NJRICO claim); *Tedeschi v. Smith*, No. CIV.A. 09-03134 JAP, 2010 WL 148424, at *3 (D.N.J. Jan. 12, 2010) ("In the absence of any claim for predicate acts which would constitute a pattern of racketeering activity, Plaintiffs have failed to plead a valid claim."). Further, Plaintiffs nowhere allege facts potentially supporting an NJRICO claim against FADS, Fimbel III, Deal, or even FDC. *See Jaguar Cars, Inc. v. Royal Oaks Motor Car Co.*, 46 F.3d 258, 268 (3d Cir. 1995) ("[A] claim simply against one corporation as both 'person' and 'enterprise' is not sufficient.").

Also, in light of the fundamental defects that plague Plaintiffs' NJRICO claims the Court denies Plaintiffs' request for leave to amend their NJRICO claim and their request to file a RICO Case Statement in support of their NJRICO claim. In any event, RICO case statements are ordinarily used only for actions arising under the federal RICO statute. *See* L.R. 16(b)(4); L.R. APP'X O.

### c.   Count Eight – Unjust Enrichment

In Count Eight, Plaintiffs allege a claim of unjust enrichment. To establish a claim for unjust enrichment under New Jersey law, "a plaintiff must show both that defendant received a benefit [at the plaintiff's expense] and that retention of that benefit without payment would be unjust." *VRG Corp. v. GKN Realty Corp*., 135 N.J. 539 (1994); *see also In re K–Dur Antitrust Litigation,* 338 F. Supp. 2d 517, 544 (D.N.J. 2004). "Unjust enrichment is not an independent theory of liability, but is the basis for a claim of quasi-contractual liability. We have recognized, however, that a claim for unjust enrichment may arise outside the usual quasi-contractual setting." *Goldsmith v. Camden Cnty. Surrogate's Office*, 408 N.J. Super. 376, 382 (App. Div. 2009) (internal quotation marks and citations omitted). An unjust enrichment claim may be sustained independently as an alternative theory of recovery. *In re K–Dur Antitrust Litigation,* 338 F. Supp. 2d 517, 544 (D.N.J. 2004) (finding the defendant's motion to dismiss the plaintiff's unjust enrichment claim as premature even where other remedies at law were available to plaintiff); *see also Maniscalco v. Brother Int'l Corp. (USA)*, 627 F. Supp. 2d 494, 505 (D.N.J. 2009); *United States v. Kensington Hosp.*, 760 F. Supp. 1120, 1135 (E.D. Pa. 1991) (allowing the plaintiff to assert an unjust enrichment claim as an alternative theory of recovery when the plaintiff had asserted a cognizable contract claim in the same complaint). "Courts generally allow recovery in *quasi*-contract when one party has conferred a benefit on another, and the circumstances are such that to deny recovery would be unjust." *Weichert Co. Realtors v. Ryan*, 128 N.J. 427, 437 (1992).

Count Eight incorporates earlier allegations and states, "By acting as described above, Defendants have breached their underlying duties and have been unjustly enriched at the expense of Plaintiffs in an amount that presently cannot be determined by Plaintiffs." Am. Compl. at ¶ 101.

Count Eight goes on to allege that "[a]s a direct and proximate result of Defendants' unjust enrichment, Plaintiffs have sustained substantial damages." *Id.* ¶ 102.

Defendants state that (1) Plaintiffs' unjust enrichment claim is subject to Rule 9(b)'s heightened pleading requirements because it sounds in fraud and (2) Plaintiffs fail to meet those requirements.

Plaintiffs argue in their opposition brief that the Amended Complaint alleges the following facts to support their unjust enrichment claim: (1) Fimbel Jr. and his relatives received benefits that Plaintiffs did not and (2) "FADS has been enriched by unauthorized loans given to it in breach of the fiduciary duties owed to FDC's shareholders." Pls.' Opp. Brief at 18; *see also* Am. Compl. at ¶ 71. Plaintiffs further assert that they are unable to allege the total extent of Defendants' unjust enrichment because Defendants have not made FDC's financial records available to Plaintiffs.

Regardless whether Plaintiffs' claims are subject to Rule 9(b), Plaintiffs fail to state a claim for unjust enrichment because "Plaintiff[s] do[] not purport to have given anything at all to Defendants. In the absence of a benefit conferred, there can be no claim for unjust enrichment." *DiCarlo v. St. Mary Hosp.*, 530 F.3d 255, 268 (3d Cir. 2008) (applying New Jersey law); *see also Weichert*, 128 N.J. at 437; *Maniscalco v. Brother Int'l Corp. (USA)*, 627 F. Supp. 2d 494, 506 (D.N.J. 2009) (dismissing an unjust enrichment claim because the plaintiff did not directly confer a benefit upon the defendant). Here, Plaintiffs do not allege anywhere in their claim that they conferred a benefit on FDC, FADS, Fimbel Jr., Fimbel III, or Deal.[13] *See generally* Am. Compl. Accordingly, the Court will dismiss Plaintiffs' unjust enrichment claim.

> d.   *Count Nine – Aiding and Abetting*

---

[13] Even if Plaintiffs had alleged a benefit conferred, Plaintiffs would have to show that benefit was *directly* conferred by establishing a relationship between Plaintiff and each defendant directly conferring the benefit. *Maniscalco*, 627 F. Supp. 2d at 506.

Finally, Count Nine alleges a claim of aiding and abetting against FADS and Deal. "To establish a claim for aiding and abetting a breach of fiduciary duty, a plaintiff must allege: (1) a breach of fiduciary duty; (2) the defendant's knowledge of and substantial assistance in that breach; and (3) damages resulting from the breach." *Wiatt v. Winston & Strawn LLP*, 838 F. Supp. 2d 296, 307 (D.N.J. 2012); *see also McCormac v. Qwest Communications Intern., Inc.,* 387 N.J. Super. 469, 481–83 (N.J. App. Div. 2006); *Judson v. Peoples Bank & Trust Co.*, 25 N.J. 17, 28–30 (1957).

In Count Nine, Plaintiffs state:

> FADS and Jeffry Deal have knowingly aided and abetted FDC's, Fimbel Jr.'s, and Fimbel III's wrongdoing as set described more fully herein. FADS and Deal have acted and are acting with knowledge or with reckless disregard that the other Defendants are in breach of their fiduciary and statutory obligations towards Plaintiffs and have participated in such breaches of fiduciary duties, and thus are liable as aiders and abettors. FADS and Deal have also been active and necessary participants in the other Defendants' plan to oppress Plaintiffs, and in the effective, yet unauthorized merger of FDC and FADS.

Am. Compl. at ¶ 105. Defendants argue that the Amended Complaint fails to allege that FADS or Deal knowingly and substantially participated in the alleged fraud perpetrated by FDC, Fimbel Jr., and/or Fimbel III.[14]

The Court agrees. While Plaintiffs allege that (1) Deal, Fimbel Jr., and Fimbel III formed a plan to continue the business of manufacturing garage doors by cannibalizing from FDC's equipment, client base, and goodwill and (2) Deal began working for FDC in the 1990s, the Amended Complaint is devoid of any facts that could support the inference that Deal or FADS substantially assisted Fimbel Jr., Fimbel III, or FDC in breaching any fiduciary obligations owed to Plaintiffs. *See* Am. Compl. Indeed, the Amended Complaint is also bereft of any facts supporting the threshold contention that FADS owed any fiduciary obligations to Plaintiffs, since Plaintiffs

---

[14] Defendants further argue that because Count Three, Plaintiffs' fraud claim, should be dismissed, so too should Count Nine. However, the Court did not dismiss Count Three. *See infra* at 10.

owned no shares of FADS and, as the Amended Complaint itself points out, Plaintiffs "receive no benefit from FADS." Am. Compl. at ¶ 34. As such, Plaintiffs' aiding and abetting claims must be dismissed.[15]

**IV.    Conclusion**

For the reasons stated above, the Court grants Defendants' motion to dismiss Counts Five, Eight, and Nine. The Court denies Defendants' motion with respect to Count Three. Finally, the Court denies Plaintiff's request in the alternative for leave to amend their Amended Complaint.

An appropriate order will follow.

Date: December 10, 2014                          /s/ Freda L. Wolfson_____
                                                 Freda L. Wolfson, U.S.D.J.

---

[15] Like Plaintiffs' NJRICO claim, I find Plaintiffs' aiding and abetting claim fundamentally flawed and thus deny Plaintiffs' request for leave to re-plead the claim on ground of futility. *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 245 (3d Cir.2008).